```
                IN THE UNITED STATES DISTRICT COURT
               FOR THE EASTERN DISTRICT OF VIRGINIA
                         Newport News Division
```

LAMONICA SAMUEL,                :
                                :
     Plaintiff,                 :
                                :
v.                              :    Civil Action No. 4:04cv50
                                :
WILLIAMSBURG-JAMES CITY         :
COUNTY SCHOOL BOARD, by         :
Denise W. Koch, Chairperson,    :
                                :
     Defendant.                 :
_____  :

## OPINION AND ORDER

LaMonica Samuel, an African-American woman, alleges that she experienced race-based discrimination while employed as an Administrative Assistant/Registrar ("Registrar") at Jamestown High School ("Jamestown"). Although Ms. Samuel's relationship with certain members of Jamestown's administration became increasingly acrimonious, her race did not contribute to this deterioration. Rather, her poor job performance was to blame, and it ultimately led to her termination by the Williamsburg-James City County School Board (the "School Board"). She subsequently filed this action, pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981.

Despite open discovery, Ms. Samuel is unable to offer any credible evidence that discrimination, rather than poor job performance, prompted her dismissal. The Court therefore **GRANTS**

the School Board's Motion for Summary Judgment (Docket No. 82).

## I. Facts and Procedural Background

Ms. Samuel began working at Jamestown in 1999. At some point during her tenure, she assumed the position of Registrar. In that capacity, Ms. Samuel served at the direction of Jamestown's guidance counselors. Though she was generally tasked with managing all student records, her critical job responsibilities included processing students' requests to transfer or withdraw from certain classes, as well as preparing and forwarding students' transcripts to colleges. (WJCC 078.)[1]

At the beginning of the 2001-2002 school year, Ms. Samuel's job performance began to decline. Ms. Samuel failed to submit, or submitted defective, multiple add/drop forms on behalf of students seeking to change their course schedules. She excused students from class for "guidance counseling," and provided them with notes to that effect, without seeking prior authorization from a guidance counselor. One of those students ran errands for Ms. Samuel. (WJCC 010.)

During the same school year, Ms. Samuel, without consulting her superiors, enrolled students in online classes at Keystone National High School ("Keystone"), a virtual institution.

---

[1] In citing the exhibits supporting the School Board's summary judgment brief (Docket No. 83), the Court will use the School Board's page numbering system.

Jamestown students could complete a limited number of internet courses, excluding those related to math and science, with the prior approval of a guidance counselor or Jamestown's principal, an African-American man named Andrew Cypress. Yet, a 2001-2002 status report addressed to "L. Samuel, Counselor" listed eight students who completed Keystone classes without prior authorization. (Nilson Aff. ¶ 6.) Three of those students took math courses. Id.

The following school year, Ms. Samuel submitted a number of students' transcripts to the wrong universities. She mailed other transcripts late.[2] She packaged transcripts in bulk and handwrote mailing addresses, even though Robert Nilson, the lead guidance counselor at Jamestown, asked her to mail each transcript separately and typewrite the addresses.[3] To make matters worse, Ms. Samuel continued to erroneously process students' add/drop forms and misfile student records.

---

[2] In one case, a "student's application to West Virginia University and the University of Kentucky were rejected because Ms. Samuel failed to timely process the request." (Nilson Aff. ¶ 18; WJCC 028).

[3] The guidance department once received a returned envelope addressed to "C.N.U., Admission, 1 University Place." (WJCC 029.) Ms. Samuel presumably meant to send the envelope to Christopher Newport University in Newport News, Virginia. For whatever reason, she abbreviated the school's name and failed to include the city, state, and zip code. Additionally, she handwrote the address.
   Ms. Samuel omitted similar information on an envelope mailed to, but never received by, Ohio University. (WJCC 020.)

Ms. Samuel's supervisors were less than pleased with her work. Daniel Fields, Jamestown's assistant principal, met with Ms. Samuel about her deficiencies on numerous occasions. He and Mr. Nilson also noted Ms. Samuel's shortcomings in emails and memoranda. More often than not, their criticism provoked an impassioned response by Ms. Samuel. Consequently, Principal Cypress spent a substantial amount of time refereeing these disputes.

On May 7, 2003, Ms. Samuel met with Principal Cypress and Marguerita DeSander, the Director of Human Resources for the School Board, to discuss her future with the Williamsburg-James City County school system.[4] Principal Cypress informed Ms. Samuel that he would recommend that the School Board not renew her contract for the 2003-2004 school year.[5] (WJCC 038.) Ms. DeSander waited until May 14, 2003 to forward Principal Cypress's recommendation to the School Board, in order to give Ms. Samuel the opportunity to resign. Instead of resigning, Ms. Samuel petitioned the School Board for a hearing on Principal Cypress's recommendation. The School Board denied her petition.

---

[4] At this meeting, Ms. Samuel first insinuated some racial impetus behind her superiors' actions during the preceding two school years.

[5] Although Principal Cypress definitely told Ms. Samuel of his recommendation on May 7, he previously had discussed this topic with her "the week preceding Spring Break" and on more than one occasion thereafter. (WJCC 037.)

Around the same time, Ms. Samuel also requested a medical leave of absence due to work-related stress. She asked to be excused from work for the remainder of her contract, which was to expire on June 30, 2003. The School Board granted her request. Days later, Ms. Samuel changed her mind. She asked the School Board to allow her to work on Saturdays during the summer months. The School Board denied that request, as Ms. Samuel previously had submitted a physician's status report in which her doctor opined that she was unable to perform her job functions due to her mental infirmity.[6]

At its June 2, 2003 meeting, the School Board voted not to renew Ms. Samuel's contract.[7] Rita Dryden, the other administrative assistant in Jamestown's guidance department, was selected to fill Ms. Samuel's position.

On January 8, 2004, Ms. Samuel filed a discrimination and retaliation claim with the Equal Employment Opportunity Commission ("EEOC"). The EEOC issued Ms. Samuel a Notice of

---

[6] Ms. Samuel apparently convalesced rapidly. At some point in June 2003, she interviewed for a secretarial position at Berkeley High School ("Berkeley"), another institution within the School Board's purview. When she did not receive an offer, Ms. Samuel called Berkeley's principal and asked him to explain why he had not selected her. Ms. Samuel subsequently received a letter from Dr. Beers asking her to contact the human resources department if she had questions regarding the hiring process.

[7] To support his recommendation, Principal Cypress submitted a Memorandum to Dr. Carol Beers, the School Board's Superintendent, chronicling Ms. Samuel's underwhelming performance. (WJCC 043.)

Right to Sue and, Ms. Samuel, acting pro se, timely filed the instant lawsuit. In addition to suing the School Board, Ms. Samuel named a number of her former supervisors as Defendants in her Amended Complaint. (Docket No. 43.) She based her claims on federal statutes and Virginia common law causes of action.

By Order dated July 17, 2007, the Court dismissed all Defendants from the lawsuit except the School Board. (Docket No. 74.) The Court also dismissed many of Ms. Samuel's claims. Id. Four claims survived: (1) disparate treatment under Title VII, 42 U.S.C. § 2000e-2(a); (2) hostile work environment under Title VII, 42 U.S.C. § 2000e-2(a); (3) retaliation under Title VII, 42 U.S.C. § 2000e-3(a); and (4) equal rights violation under 42 U.S.C. § 1981. This matter is before the Court on the School Board's Motion for Summary Judgment on all four claims. (Docket No. 82.)

## II. **Principles of Summary Judgment**

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[8] Fed. R. Civ. P.

---

[8] Because the principles of summary judgment are well-established, further elucidation of those principles need not be provided here. See Garrow v. Economos Props., Inc., 406 F. Supp.

6

56(c); see also Hunt v. Cromartie, 526 U.S. 541, 549 (1999); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Warch v. Ohio Cas. Ins. Co., 435 F.3d 510, 513 (4th Cir.), cert. denied, 127 S.Ct. 53 (2006); Walton v. Greenbrier Ford, Inc., 370 F.3d 446, 449 (4th Cir. 2004). A court "must take special care" when considering a summary judgment motion in an employment discrimination case because the employer's "motive is often the critical issue." Beall v. Abbott Labs., 130 F.3d 614, 619 (4th Cir. 1997) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958 (4th Cir. 1996)), abrogation recognized on other grounds, Gilliam v. S.C. Dep't of Juvenile Justice, 474 F.3d 134 (4th Cir. 2007); Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987). Nevertheless, summary judgment remains an appropriate disposition when the plaintiff is unable to prevail on his or her discrimination claims as a matter of law. Beall, 130 F.3d at 619; Evans, 80 F.3d at 958-59.

### III. **Analysis**

A plaintiff proceeding under Title VII may prove his or her

---

2d 635, 638-39 (E.D. Va. 2005) (providing detailed description of summary judgment principles), aff'd, 242 F. App'x 68 (4th Cir. 2007); Taylor v. Wal-Mart Stores, Inc., 376 F. Supp. 2d 653, 657-58 (E.D. Va.) (same), aff'd, 158 F. App'x 446 (4th Cir. 2005); Puckett v. City of Portsmouth, 391 F. Supp. 2d 423, 430-31 (E.D. Va. 2005) (same).

case in one of two ways. See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 318 (4th Cir. 2005); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004); EEOC v. Clay Printing Co., 955 F.2d 936, 940 (4th Cir. 1992); Goldberg v. B. Green and Co., 836 F.2d 845, 847-48 (4th Cir. 1988). First, he or she may establish a claim for discrimination "under the ordinary standards of proof by direct or indirect evidence relevant to and sufficiently probative of the issue." Clay Printing Co., 955 F.2d at 940; see also Diamond, 416 F.3d at 318; Hill, 354 F.3d at 284; Goldberg, 836 F.2d at 847.

Alternatively, a Title VII plaintiff may proceed under the burden-shifting framework established by the Supreme Court of the United States in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Diamond, 416 F.3d at 318; Hill, 354 F.3d at 285; Clay Printing Co., 955 F.2d at 940; Goldberg, 836 F.2d at 847. Because Ms. Samuel has not presented evidence of discriminatory intent, the Court will examine her claims of discrimination using the McDonnell Douglas burden-shifting framework.[9] See Hill, 354

---

[9] Under the McDonnell Douglas framework, a plaintiff asserting a claim under Title VII has the initial burden to prove a prima facie case of discrimination by a preponderance of the evidence. McDonnell Douglas Corp., 411 U.S. at 802; see also Raytheon Co. v. Hernandez, 540 U.S. 44, 50 (2003); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Mackey v. Shalala, 360 F.3d 463, 468 (4th Cir. 2004). In making such a showing, a plaintiff "rais[es] an inference that the defendant acted with discriminatory intent." Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1227 (4th Cir. 1998).
Once the plaintiff establishes a prima facie case, the

F.3d at 284-85; Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002); Puckett, 391 F. Supp. 2d at 431 n.2.

A. Title VII Claims

1. Disparate Treatment

In order to establish a prima facie case of disparate treatment, Ms. Samuel must show: "(1) that she is a member of a protected class; (2) that she was qualified for her job and her job performance was satisfactory; (3) that, in spite of her qualifications and performance, she was fired; and (4) that the position remained open to similarly qualified applicants after her dismissal." Karpel, 134 F.3d at 1228 (quoting Williams v.

---

burden shifts to the defendant to articulate a "legitimate, nondiscriminatory reason" for the defendant's employment action. McDonnell Douglas Corp., 411 U.S. at 802; see also Raytheon Co., 540 U.S. at 50; St. Mary's Honor Ctr., 509 U.S. at 506-07; Mackey, 360 F.3d at 468. If the defendant meets this burden, then "the presumption raised by the prima facie case is rebutted" and the presumption "drops from the case." St. Mary's Honor Ctr., 509 U.S. at 507 (quoting Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 & n.10 (1981)); see also Mackey, 360 F.3d at 468. The plaintiff then must have a "full and fair opportunity" to demonstrate, through the presentation of its own evidence and the cross-examination of the defendant's witnesses, that the defendant's proffered reason for its employment decision was not the true reason, but was merely a pretext for discrimination. St. Mary's Honor Ctr., 509 U.S. at 507-08; Burdine, 450 U.S. at 253, 255-56; Hill, 354 F.3d at 285; see Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 (4th Cir. 2002). Although the McDonnell Douglas framework shifts the burden of production between the parties, the plaintiff retains the "ultimate burden" of persuasion. St. Mary's Honor Ctr., 509 U.S. at 508 (quoting Burdine, 450 U.S. at 256); see Hill, 354 F.3d at 285.

9

Cerberonics, Inc., 871 F.2d 452, 455 (4th Cir. 1989)); see 42 U.S.C. § 2000e-2(a).  Because her job performance was unsatisfactory, Ms. Samuel cannot satisfy the standard's second element.

During her last two years at Jamestown, Ms. Samuel consistently failed to meet the demands of her job.  She defectively processed add/drop forms and forgot to mail students' transcripts to colleges.  She mailed other transcripts to the wrong institutions.  More than once, she excused students from class and enrolled students for online classes, without authorization.  When eventually confronted about her errors, Ms. Samuel exhibited obstinance and refused to take responsibility for her actions.

In light of this unrebutted evidence, the Court concludes that Ms. Samuel's job performance was unsatisfactory.  The School Board therefore had a legitimate, non-discriminatory reason for not renewing her contract.[10]

---

[10] In her Complaint, Ms. Samuel identifies numerous events she regards as discriminatory.  For instance, she claims that Dianne Spearman, a guidance counselor at Jamestown, forced her to shred paper in front of white co-workers.  Ms. Samuel also claims that her access to Starbase, Jamestown's student records database, was unreasonably restricted.  Finally, she contends that the School Board inexplicably refused to grant her request to work Saturdays in the summer of 2003, though they accommodated Ms. Dryden, her white co-worker, when she made a similar request.
    The affidavits accompanying Defendant's Motion for Summary Judgment belie Ms. Samuel's claims and further highlight her insubordination.  When Ms. Spearman asked Ms. Samuel to shred paper, which consisted of Jamestown Lafayette Education Fund

10

2.  <u>Hostile Work Environment</u>

In order to establish a prima facie case of a hostile work environment, Ms. Samuel must "demonstrate that a reasonable jury could find [her superiors'] harassment: (1) unwelcome; (2) based on race; and (3) sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere." <u>Spriggs v. Diamond Auto Glass</u>, 242 F.3d 179, 183 (4th Cir. 2001); <u>see</u> 42 U.S.C. § 2000e-2(a). She must also show that there exists some foundation for imposing liability on the School Board. <u>Id.</u> at 184. Again, the second element bars Ms. Samuel's claim.

Ms. Samuel's inability, and at times her refusal, to execute her job functions led her supervisors to admonish her. The School Board has submitted affidavits and exhibits documenting Ms. Samuel's inadequate job performance. Conversely, Ms. Samuel

---

scholarship applications, Ms. Samuel was the sole administrative assistant present in the guidance department. (Cypress Aff. ¶ 19.) When Ms. Samuel resisted the directive, Ms. Spearman consulted Principal Cypress. <u>Id.</u> He informed Ms. Samuel that her job responsibilities included shredding paper and she should follow Ms. Spearman's instructions. <u>Id.</u> In fact, Ms. Samuel did not shred all of the applications, as she produced a number of these documents during discovery. (Dumville Aff.; Spearman Aff. ¶ 8; <u>see</u> WJCC 047-070.)

Principal Cypress's affidavit also rebuts Ms. Samuel's characterization of her access to Starbase. (Cypress Aff. ¶ 18.) Because Starbase contained information capable of alteration, including student's grades, Jamestown employees had varying degrees of access, depending on their need to reference or input that information. <u>Id.</u> Principal Cypress avers that Ms. Samuel had sufficient Starbase access to carry out her job duties. <u>Id.</u>

Finally, the School Board did not allow Ms. Samuel to alter her schedule because it had already granted her medical leave until her contract expired. <u>See</u> <u>supra</u> p.5.

has not put forth any evidence that suggests a racial motive behind her supervisors' rebukes.[11]

The Court finds Judge Wilkinson's observation in <u>Hawkins v. PepsiCo, Inc.</u>, 203 F.3d 274 (4th Cir. 2000), particularly apt under the instant circumstances:

> [Workplace disputes] are an inevitable byproduct of the rough edges and foibles that individuals bring to the table of their interactions. Law does not blindly ascribe to race all personal conflicts between individuals of different races. To do so would turn the workplace into a litigious cauldron of racial suspicion.

<u>Id.</u> at 282. Furthermore, even if the criticism of Ms. Samuel by Principal Cypress (who is African-American), Mr. Fields, Ms. Nilson, or Ms. Spearman could by some stretch of the imagination be characterized as harsh or excessive, such reprimands still do not equate to racially-motivated harassment. See <u>id.</u>

3.  <u>Retaliation</u>

In order to prove a prima facie case of retaliation, Ms. Samuel must show: "(1) that she engaged in protected activity, (2) that an adverse employment action was taken against her, and (3) that there was a causal link between the protected activity

---

[11] In support of her Memorandum in Opposition to Defendant's Motion for Summary Judgment (Docket No. 88), Ms. Samuel submitted the affidavits of two African-American women, Ella Perry and Dianne Shackleford-Williams (Docket No. 92). The affiants, both of whom are former Jamestown employees, claim that school officials discriminated against them in a similar manner. However, their statements in no way relate to the allegations in Ms. Samuel's Amended Complaint. Thus, their averments do not bear on the disposition of the instant Motion.

and the adverse employment action." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998) (citing Hopkins v. Balt. Gas & Elec. Co., 77 F.3d 745, 754 (4th Cir. 1996)); see 42 U.S.C. § 2000e-3(a). Assuming that Ms. Samuel's complaint of discrimination to Principal Cypress and Ms. DeSander during their meeting on May 7, 2003 constitutes protected "opposition activity,"[12] she has not linked that complaint to her termination. Her claim therefore fails the last element.

Shortly before Jamestown's spring break in 2003, Principal Cypress first told Ms. Samuel that he might recommend that the School Board not renew her contract for the following school year. Thus, when Ms. Samuel complained of discrimination at the meeting on May 7, her job already hung in the balance. Ms. Samuel has not proffered evidence that her mention of discrimination contributed to Principal Cypress's recommendation. Consequently, she has not shown a connection between her activity

---

[12] Section 2000e-3(a) of Title 42 of the United States Code makes it unlawful "for an employer to discriminate against any of [its] employees . . . because [he or she] has opposed any practice made an unlawful employment practice by [42 U.S.C. § 2000e-2(a)]." An employee's "behavior need not rise to the level of formal charges of discrimination" to qualify as opposition activity. Armstrong v. Index Journal Co., 647 F.2d 441, 448 (4th Cir. 1981). "Voicing complaints to employers" may suffice. Id. In order to address the third prima facie element, the Court will presume that when Ms. Samuel complained to Principal Cypress and Ms. DeSander of experiencing "unfair treatment and practices that rise to the level of" discrimination (WJCC 038), she engaged in protected activity.

13

and her termination.[13]

Nor has Ms. Samuel proven that her opposition activity precipitated the School Board's decision. The School Board based its decision on Ms. Samuel's sub-par track record, which Principal Cypress documented in the Memorandum he sent to Dr. Beers. See supra note 6.

B. Equal Rights Claim

The elements of an equal rights claim are identical to those of a disparate treatment claim. Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985); see Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 n.4 (4th Cir. 2005). Accordingly, Ms. Samuel's allegation under 42 U.S.C. § 1981 also fails because her job performance was unsatisfactory. See supra Part III.A.1.

## IV. Conclusion

For the above reasons, the Court **GRANTS** the School Board's Motion for Summary Judgment (Docket No. 82).

---

[13] In fact, in a letter to Ms. Samuel, Ms. DeSander encouraged Ms. Samuel to pursue her discrimination claim. (WJCC 038.) She also asked Ms. Samuel to document the instances of discrimination so that Ms. DeSander could "fully investigate" them. Id. Ms. Samuel never submitted the requested documentation.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Plaintiff and to all counsel of record.

**IT IS SO ORDERED.**

/s/
Walter D. Kelley, Jr.
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
March __, 2008